## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-10960(KG) |
| IDLEAIRE TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| _____Debtor._____ | ) | |
| WAUSAU BUSINESS INSURANCE COMPANY | ) | |
| and EMPLOYERS INSURANCE OF WAUSAU | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiffs/Counterclaim Defendants, | ) | |
| | ) | |
| v. | ) | Adv. No. 08-51227(KG) |
| | ) | |
| IDLEAIRE TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| Debtor/Defendant/Counterclaim Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NANCY YOUNGER and | ) | |
| ESTATE OF WILLIAM YOUNGER, | ) | |
| | ) | |
| _____Claimants/Movants/Defendants._____ | ) | **Re Dkt Nos. 11 & 17** |

## <u>MEMORANDUM OPINION</u>

Attorneys for Wausau Business Insurance Company and Employers Insurance of Wausau:

Charlene D. Davis, Esq.                  Laura A. Foggan, Esq.
BAYARD, P.A.                             WILEY REIN LLP
222 Delaware Avenue, Ste. 900            1776 K Street NW
Wilmington, DE 19899-5130                Washington, DC 20006

Attorneys for Idleaire Technologies Corp. and Estate of William Younger:

John C. Phillips, Esq.                   Elizabeth Russo, Esq.
PHILLIPS, GOLDMAN & SPENCE, PA           LAW OFFICE OF DON RUSSO, P.A.
1200 North Broom Street                  7990 Red Road
Wilmington, DE 19806                     Miami, FL 33143

**KEVIN GROSS, United States Bankruptcy Judge**

In this declaratory judgment adversary proceeding, insurers seek to exclude coverage of defendant/debtors, IdleAire Technologies Corporation's ("IdleAire" or the "Debtors") insurance policies and thereby avoid paying losses from a potential judgment against Debtors in a personal injury action.  Plaintiffs Wausau Business Insurance Company and Employers Insurance of Wausau Company (collectively "Wausau") have filed a motion for summary judgment and claimants/defendants Nancy Younger and the Estate of William Younger (the "Youngers"), the plaintiffs in the personal injury action, have cross-moved for summary judgment.  Wausau bases its motion on two arguments: (1) that certain pollution exclusion endorsements (the "Pollution Exclusions") in the IdleAire Insurance Policies (the "Policies") exclude coverage for the Youngers' injuries, and (2) that actions taken by the IdleAire executives breached the terms of the Policies, negating Wausau's responsibility to pay the Youngers' claims.  The Youngers cross-moved for summary judgment on the Pollution Exclusions argument and contend that summary judgment is inappropriate as to the breach of Policies argument.  The Court heard oral argument on these motions on January 22, 2009.  For the reasons set forth below, the Court will grant summary judgment in favor of the Youngers on the Pollution Exclusions issue and deny summary judgment with respect to the breach of Policies issue.

## I. <u>JURISDICTION</u>

The Court's jurisdiction rests upon 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. <u>STATEMENT OF FACTS</u>

### A. <u>Background</u>

IdleAire produced HVAC delivery systems which were units intended to provide heating, cooling, and ventilation at truck stops to cabs of trucks so that they could be used as resting and sleeping accommodations for drivers while their engines were shut off.  On or about July 12, 2007, the Youngers suffered injuries stemming from carbon monoxide poisoning which was allegedly caused by a malfunctioning Idleaire HVAC unit while they slept in the cab of their truck.  Specifically, they allege that instead of filtering and removing all toxins from fumes in the air and emissions surrounding the truck, the unit drew those poisonous emissions into the cab of their truck.  Nancy Younger suffered permanent and disabling injuries and William Younger subsequently died of complications related to the accident.

According to the Youngers, they promptly asserted a claim against IdleAire, and in the following weeks, communicated with a number of IdleAire executives, including a telephone conversation on July 25, 2007 with Thomas Badgett, IdleAire's Assistant General Counsel.  The Youngers further allege that during these communications, IdleAire offered to compensate them for any costs associated with the incident, indicating that they had visited the site of the accident and admitting that there was a problem, one which they were grateful that the Youngers had brought to their attention.

Wausau contends that IdleAire first provided notice to them of the Younger claims on January 18, 2009, more than five months after becoming aware of them.  On both February 14 and April 14, 2008, Wausua denied coverage to IdleAire for the Youngers' claims, citing the Pollution Exclusions included in the Policies as cause for the denial.

## B.  **Procedural Posture**

The Youngers filed a wrongful death action against Debtors on or about April 30, 2008 in the Circuit Court for Knox County, Tennessee (the "Action").  Their complaint asserts causes of action for strict product liability, negligent failure to warn, breach of express and implied warranties and negligence.  They are seeking $18 million for compensatory damages, discretionary costs and attorney's fees.  On May 12, 2008, the Debtors filed a Chapter 11 Voluntary Petition in this Court, staying the Action pursuant to 11 U.S.C. §362(a).  Wausau filed an adversary proceeding in the IdleAire case against the Debtors and the Youngers on August 13, 2008, seeking declaratory relief regarding the availability of coverage for the Action under the Policies.  On October 27, Wausau filed the motion for summary judgment at issue here (D.I. 12).  The Youngers filed their Response and Cross-Motion for Summary Judgment on December 3, 2008 (D.I. 17).  IdleAire did not participate in the briefing or argument of the motions.

## C.  **IdleAire's Insurance Policies**

Wausau issued two policies, a primary policy and a secondary, umbrella, policy to the Debtors.  Wausau Business Insurance Company issued a Commercial Package Policy (the "CGL Policy") which none of the parties dispute was in effect at the time of the Youngers' injuries.  The CGL Policy contains a Total Pollution Exclusion Endorsement, language used industry-wide to exempt insurers from covering those sums for which the insured is liable for polluting events.  That language is as follows:

*This insurance does not apply to:*

*f.       (1) The "contamination" of any "environment" by "pollutants" that are introduced at any time, anywhere, in anyway.*

*(2) Any "bodily injury," "personal and advertising injury" or "property damage arising out of such "contamination". . .*

**15**.    *"Pollutant" means any irritant, including noise or sound, or any solid, liquid, gaseous or thermal "contaminant," including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.*

*As used in this endorsement, the following terms have the following meanings:*

> *"Contamination" means any unclean or unsafe damaging or injurious or unhealthful condition arising out of the presence of "pollutants," whether permanent or transient in any "environment."*

> *"Environment" includes any person, any man-made object or feature, animals, crops or vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled or occupied by the insured.[1]*

Employers Insurance of Wausau Company issued an Umbrella Excess Liability Policy (the "UEL Policy") to the Debtors, a separate policy which was also in effect at the time of the incident.  This policy similarly contains a pollution exclusion providing:

*This insurance does not apply to:*

***1. Pollution***

> ***a.*** *"Bodily injury," "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release, escape or presence of "pollutants" at any time and whether occurring indoors or outdoors. . .[2]*

---

[1] *See* CGL Policy, Total Pollution Exclusion Endorsement, D.I. 12.

[2] *See* UEL Policy, Section IV(A)1,  D.I. 12.

## III. DISCUSSION

In their motion for summary judgment, Wausau asserted two bases for granting their request.  Primarily, they argued that under Tennessee law,[3] the circumstances presented in this case bar coverage under the pollution exclusions.  They further argued that in the alternative, if this Court holds that the facts in this case do not trigger the Pollution Exclusions, the actions of the IdleAire executives, alleged admissions of guilt in response to the Youngers' claims, constitute a breach of the insurance contract, forfeiting their coverage.  The Youngers, in their cross-motion, argued that as a matter of law, the Pollution Exclusion argument should be resolved in their favor, and that granting summary judgment on the notice argument would be improper because Wausau has not met its burden in demonstrating prejudice to the insurers, a necessary element for the Court to grant the requested relief.

### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4]  In a motion for summary

---

[3] Both parties agree that the applicable law under which this Court must evaluate the scope of coverage and other issues relating to the Policies is Tennessee law.  Therefore, this Court will apply Tennessee law to determine the substantive issues and federal law to determine the procedural issues, specifically, whether summary judgment is appropriate. Hanna v. Plumer, 380 U.S. 460, 465 (1965)("federal courts are to apply state substantive law and federal procedural law").  Here, the Court will be addressing issues of law which are novel to Tennessee courts.  "When presented with a novel issue of law, or where applicable state precedent is ambiguous, absent or incomplete, we must determine or predict how the highest state court would rule." Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991)(citing Erie Castings Co. v. Grinding Supply, Inc., 736 F.2d 99. 100 (3d Cir. 1984)).

[4] Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

judgment, the moving party "always bears the initial responsibility of informing the. . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admission on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of fact."[5]

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states,

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denies in its own pleading; rather, its response must - by affidavits or as other wise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."[6]

The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."[7]

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.[8] The court must view the facts and draw inferences in a light most favorable to the non-moving party.[9] "[W]here the non-moving party's evidence contradicts the movant's,

---

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L. Ed.2d 265 (1986).

[6] Fed. R. Civ. P. 56(e); *see also* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1349, 89 L. Ed.2d 538 (1986).

[7] *Matsushita*, 475 U.S. at 586.

[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2205, 91 L. Ed.2d 202 (1986).

[9] *See Anderson*, 477 U.S. at 255.

6

then the non-movant's must be taken as true."[10]  It is not the role of the judge to weigh the

evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for

trial."[11]

Specifically with respect to the movant's first argument, that the terms of the Pollution

Exclusions bar coverage for the instant claims, the case law in this Circuit is clear that a court

can grant summary judgment when the sole issue is interpretation of the scope of coverage.[12]

 Further, interpretation of the extent and limitations of "coverage of an insurance contract is

a question of law property decided by the court."[13]

## B. Effect of Pollution Exclusion

All parties contend that the proper construction of the Total Pollution Exclusion

Endorsement from the CGL Policy (and the similar provision in the UEL Policy) and its

interpretation as applied to the current facts, support their motion for summary judgment.[14]

Because there are no issues of material fact, the Court can properly render summary

---

[10] Pastore v. Bell Tel. Co., 24 F.3d 508, 512 (3d Cir. 1994).

[11] *Anderson*, 477 U.S. at 249.

[12] "Disposition of an insurance case on summary judgment is appropriate, when. . . there are no material underlying facts in dispute." J.C. Penny Life Ins. Co. v. Pilosi, 393 F.3d 356, 360 (3d Cir. 2004)(quoting McMillan v. State Mut. Life Assurance Co. of Am., 922 F.2d 1073, 1074 (3d Cir. 1990)).

[13] *Pilosi*, 393 F.3d at 360 (quoting Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999)).

[14] The language in the CGL Endorsement constitutes a Total Pollution Exclusion under the traditional, industry-wide standard.  The UEL pollution exclusion language does not but should be analyzed in the same way as that of the Endorsement in the CGL policy.  The Court does not reach the UEL language because of the holding that the CGL policy does not limit the coverage for the Youngers' claims.

judgment with respect to whether the law of Tennessee supports a holding that the Total

Pollution Exclusion bars coverage under the facts.[15]

## 1. <u>History of the Total Pollution Exclusion</u>

Pollution exclusions in insurance policies have become an industry-wide standard with

origins dating back to the early 1970s.  The exclusion has seen several generations, and the

one at issue, the Total Pollution Exclusion, represents the most recent variant.  It is so recent,

in fact, that no Tennessee court has had the opportunity to evaluate it under its state law.

Rather, we are limited to looking to the Tennessee Appellate Court's decision in *Sulphuric*

*Acid Trading Co. v. Greenwich Insurance Co.*[16] and the U.S. District Court for the Eastern

District of Tennessee's opinion in *CBL & Ass'n Management., Inc. v. Lumbermens Mutual*

*Casualty. Co.*,[17] which dealt with the previous version, the Absolute Pollution Exclusion, for

guidance on how Tennessee would evaluate the Total Pollution Exclusion.

---

[15] This Court recognizes that this case presents an issue that is not resolved under Tennessee law, an issue that would have been appropriate to certify to the Tennessee Supreme Court for determination.  Unfortunately, the Tennessee Rules of the Supreme Court do not allow certification from this Court.  *See* TENN. R. SUP. CT. R. 23(1)("The Supreme Court may, in its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee").  Because the scope of the Policies in light of the Pollution Exclusions, a matter of law, cannot be certified, this Court must make the necessary determinations regarding Tennessee law.  It will do so cautiously, striving to reach the same conclusions as would the Tennessee Supreme Court.

[16] Sulphuric Acid Trading Co., Inc. v. Greenwich Ins. Co., 211 S.W. 3d 243 (Tenn. Ct. App. 2006).

[17] CBL & Assoc. Mgmt, Inc. v. Lumbermens Mut. Cas. Co., 2006 WL 2087625 (E.D. Tenn. 2006).

Prior to 1966, standard CGL policies covered bodily injury and property damage "caused by accident."[18]  In that year, insurance companies increased premiums and changed the language of the standard policies to provide "occurrence-based" coverage.[19]  Because "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured,"[20] courts consistently held that these policies covered damages resulting from gradual pollution so "long as the ultimate loss was neither expected nor intended" regardless of whether the discharge of pollutants was intentional.[21]  In response to increasing public awareness about the detrimental effects of pollution on the environment as well as the Congressional promulgation and amendment of environmental statutes, the burdens on insurance companies to meet the financial demands of claims resulting from pollution increased dramatically in the 1970s.[22]

Insurance companies responded to this increased demand by offering separate Environmental Impairment Liability policies and diverting coverage for environmental risks away from their commercial general liability policies, using the original general pollution

---

[18] *See Sulphuric Acid*, 211 S.W. 3d at 248; *see also* New Castle County v. Hartford Accident and Indem. Co., 933 F.2d 1162, 1196 (3d Cir. 1991).

[19] *See Sulphuric Acid*, 211 S.W. 3d at 248; *see also New Castle County*, 933 F.2d at 1196.

[20] *New Castle County*, 933 F.2d at 1196-97 (quoting Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo. L.J. 1237, 1246-47 (1986)).

[21] *Id.* at 1197.

[22] *See Sulphuric Acid*, 211 S.W. 3d at 249; *see also New Castle County*, 933 F.2d at 1197; Doerr v. Mobile Oil Co., 774 So.2d 119, 126 (La. 2000).

exclusions.[23]  This original exclusion provided that coverage was excluded for:

> Bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.[24]

Subsequently, insurers also included a "'sudden and accidental' exception to the exclusion: 'This exclusion does not apply if such discharge, dispersal, release or escape is sudden or accidental.'"[25]  This "sudden and accidental" language produced volumes of case law attempting to divine its exact meaning,[26] the result of which was disparate results from jurisdiction to jurisdiction.

Meanwhile, Congress enacted even more legislation aimed at protecting the environment, including the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) which allowed the government and individuals to act as quasi-regulators, carrying out the cleanup of waste sites and recouping the expenses from the responsible parties.[27]  CERCLA and other statutes further increased the burden on insurance companies, and in response to both CERCLA and the fact that some jurisdictions were

---

[23] *See Doerr*, 774 So.2d at 126 (citing FRANK P. GRAD, TREATISE ON ENVIRONMENTAL LAW, §4A.02[5][d] (1998).

[24] *Doerr*, 774 So. 2d at 126 (citing 9 LEE R. RUSS, COUCH ON INSURANCE § 127:6 (3d ed. 1997)).

[25] *Id.*; *see also New Castle County*, 933 F.2d at 1197; *Sulphuric Acid*, 211 S.W. 3d at 249-50.

[26] *See Sulphuric Acid*, 211 S.W. 3d at 250 ("This controversy generated an enormous amount of litigation, leading one commentator to describe the dispute as one of 'the most hotly litigated insurance coverage questions of the late 1980's'"); *see also Doerr*, 774 So. 2d at 126.

[27] *See Doerr*, 774 So. 2d at 126.

holding insurance companies liable under the "sudden and accidental language," in 1986, a new pollution exclusion was born: the "absolute" pollution exclusion (the "Absolute Pollution Exclusion").[28]  The standard language of this version excluded:

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
>> At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . .
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[29]

At the time of the release of the Absolute Pollution Exclusion, insurance companies also submitted a companion pollution liability insurance policy which they intended to provide to "restore the insurance coverage excluded by the exclusion."[30]  The position of the insurance industry as well as the expectation of insurance regulators regarding the exclusion and the new policy was that the exclusion would not "be read more broadly than the policy which restores the deleted coverage."[31]  Regulators, however, were not ignorant of the possibility of over-broad application of the exclusion.  In fact, former Louisiana Insurance Commissioner, James H. Brown, went so far as to note that the terms of the exclusion were

---

[28] *See id.*; *Sulphuric Acid*, 211 S.W. 3d at 250.

[29] Donaldson v. Urban Land Interests, Inc., 564 N.W. 2d 728, 730 (Wis. 1997).

[30] John N. Ellison, Richard P. Lewis, Nicholas M. Insua, & Luke E. Debevec, *Recent Developments in the Law Regarding the "Absolute" and "Total" Pollution Exclusions, the "Sudden and Accidental" Pollution Exclusion and Treatment of the "Occurrence" Definition*, SN050 ALI-ABA 1, 17 (2008).

[31] *Id.* at 18.

11

written so broadly that it was "susceptible to abuse by insurance companies arguing that it applies in situations far removed from government environmental enforcement actions."[32] The insurance companies, however, secured approval of the Absolute Pollution Exclusion by representing to regulators that coverage would not be denied for events outside of the traditional understanding of environmental pollution.[33]

Notwithstanding these assurances, insurance companies did deny coverage for incidents outside of the traditional understanding of industrial pollution under the Absolute Pollution Exclusion, bringing about another wave of vigorous litigation.  As a result, "two distinct views on the scope of the exclusion" emerged.[34]  Some jurisdictions held that the exclusion is ambiguous and therefore "applies only to traditional environmental pollution into the air, water, and soil, but generally not to all injuries involving the negligent use or handling of toxic substances that occur in the normal course of business."[35]   Other

---

[32] *Id.* at 19.

[33] *See id.*

[34] Sulphuric Acid Trading Co., Inc. v. Greenwich Ins. Co., 211 S.W. 3d 243, 251 (Tenn. Ct. App. 2006); *see also* CBL & Assoc. Mgmt, Inc. v. Lumbermens Mut. Cas. Co., 2006 WL 2087625, at *7 (E.D. Tenn. 2006).

[35] *Sulphuric Acid*, 211 S.W. 3d at 251; *see also   CBL*, 2006 WL 2087625, at *7 (citing Nautilus Ins. Co. v. Jabar, 188 F.3d 27, 30-31 (1st Cir. 1999)(Maine law); Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 530-31 (9th Cir. 1997)(Montana law); Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F/3d 34, 38 (2d Cir. 1995)(New York law); Regional Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494, 498 (10th Cir. 1994)(Colorado law); Lumbermens Mut. Cas. Co. V. S-W Indus., Inc., 23 F.3d 970, 981-82 (6th Cir. 1994)(Ohio law); Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043-44 (7th Cir. 1992)(Illinois law); C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 482-83 (3d Cir. 1981)(Virgin Islands law); Westchester Fire Ins. Co. v. City of Pittsburg, 794 F.Supp. 353, 355 (D. Kan. 1992)(Kansas law); Minerva Enters., Inc. v. Bituminous Cas. Corp., 851 S.W.2d 403, 404 (Ark. 1993); MacKinnon v. Truck Ins. Exch., 71 P.3d 1205, 1216-17 (Cal. 2003); Am. States. Ins.
(continued...)

jurisdictions held that the Absolute Pollution Exclusion is unambiguous and that it "applies equally to negligence involving toxic substances and traditional environmental pollution."[36]

The Tennessee Appellate Court determined in the *Sulphuric Acid* case that it was unnecessary for it to decide which interpretation of the Absolution Pollution Exclusion is appropriate under Tennessee law.[37]   In that case, the plaintiff, an employee involved in transferring sulphuric acid to a tanker truck, was injured when 1,800 gallons of the chemical were sprayed into the air and onto the surrounding land.[38]   The court held that the event constituted traditional environmental pollution, triggering the exclusion, even under the narrower interpretation.   As a result, the court was not forced to, and therefore did not, determine which interpretation Tennessee law supports.

The United States District Court for the Eastern District of Tennessee also addressed this debate in an opinion that it issued within days of the *Sulphuric Acid* decision.   In the *CBL*

---

[35](...continued)
Co. v. Koloms, 687 N.E.2d 72, 79 (Ill. 1997); Thompson v. Temple, 580 So.2d 1133, 1135 (La.Ct.App. 1991); Western Alliance Ins. Co. v. Gill, 686 N.E.2d 997, 999 (Mass. 1997); West Am. Ins. Co. v. Tufco Flooring E., Inc., 409 S.E.2d 692, 699-700 (N.C. Ct. App. 1991)).

[36] *Sulphuric Acid*, 211 S.W. 3d at 251; *CBL*, 2006 WL 2087624, at *8 (citing U.S. Fire Ins. Co. v. City of Warren, 87 Fed. App'x 485, 490 (6th Cir.2003)(Michigan law); Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1004-06 (4th Cir.1998)(Maryland law); Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900-02 (3d Cir.1997) (Pennsylvania law);Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co., 112 F.3d 184, 188 (5th Cir.1997)(Texas law); American States Ins. Co. v. Nethery, 79 F.3d 473, 477 (5th Cir.1996)(Mississippi law); Longaberger Co. v. U .S. Fidelity & Guar. Co., 31 F.Supp.2d 595, 603-04 (S.D.Ohio 1998)(Ohio law); Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998); Auto-Owners Ins. Co. v. Hanson, 588 N.W.2d 777, 779-81 (Minn. Ct. App.1999); Cook v. Evanson, 920 P.2d 1223, 1226 (Wash. Ct. App.1996); Peace ex rel. Lerner v. Northwestern Nat'l Ins. Co., 596 N.W.2d 429 (Wis.1999)).

[37] *See Sulphuric Acid*, 211 S.W. 3d at 253.

[38] *See id.* at 245.

case,[39] the court determined whether coverage for damages caused by a plumbing problem "that caused sewage, debris, waste and water to shoot out of the sink drains" and flooded the plaintiff's space during rainfalls was excluded by the absolute pollution exclusion contained in the policy.[40]  Because the Tennessee Supreme Court had not at that time (nor since) determined the meaning of the pollution exclusion, the task fell to that court, like this one, to determine how the Tennessee Supreme Court would decide the issue if confronted with it.[41]  It held that the Tennessee Supreme Court would adopt the broader interpretation of the clause and hold that sewage unambiguously falls within the plain meaning of "contaminant."[42]

Despite the split in authorities interpreting the Absolute Pollution Exclusion, some jurisdictions require insurance policies to include a pollution exclusion because they strengthen "environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the polluter by eliminating the option

---

[39] See CBL, 2006 WL 2087625.

[40] See id. at *2.

[41] See id. at *6.

[42] See id. at *8-9.  It is important to note here that this Court does not believe, as Wausau contended in their argument, that this opinion explicitly states that Tennessee would adopt the broader interpretation of the Absolute Pollution Exclusion.  Rather, it appears that the decision was narrowly tailored to apply only to the specific factual situation at issue and only held that the term "pollutant" unambiguously includes sewage.  While it may be the case that such an inclusion is consistent with the broader interpretation, this Court concludes that it is not a clear adoption of the broad reading.  In any event, the decision is premised on a forecast of Tennessee law and is not binding on the Court.

of spreading that risk through insurance coverage."[43]

The last five to ten years have seen yet another shift in the language of pollution exclusions. The newest generation, the Total Pollution Exclusion, was first introduced in 1988,[44] and subsequently become the standard form of language. This variation is even broader than the Absolute Pollution Exclusion. Specifically, it further limits coverage by excluding releases from products and for certain off-site releases of pollutants.[45]

## 2. Policy Construction

Wausau contends that the only way to interpret the Total Pollution Exclusion is by looking at the plain meaning of the Policies. They maintain that no further interpretation is necessary. The Youngers, however, argue the language of the Exclusion is ambiguous, and therefore, a deeper analysis of the applicability of the exclusion to this specific factual situation is necessary. They specifically contend that due to this ambiguity, the Court must construe the Policies in favor of the insureds, here IdleAire.

In interpreting policy provisions, a court must first determine whether the relevant language is ambiguous. If the language is unambiguous, the court is bound to make interpretive decisions based on the plain meaning of the words.[46] "Exclusions in insurance

---

[43] Doerr v. Mobile Oil Co., 774 So.2d 119, 127 (La. 2000)(quoting LEE, *supra* note 24, § 127:6).

[44] *See* Ellison, *supra* note 30, at 21.

[45] *See id.* For the language of the Total Pollution Exclusion, *see supra* Part II.C.

[46] *See* Sulphuric Acid Trading Co., Inc. v. Greenwich Ins. Co., 211 S.W. 3d 243, 246 (Tenn. Ct. App. 2006).

contracts will be liberally interpreted in favor of the insured against the insuror [sic] if ambiguous"[47] because insurers are strictly accountable for the language in their contracts.[48]

### 3. The "Reasonable Expectations" Doctrine Controls the Plain Meaning of the Exclusions

Consistent with existing Tennessee law, this Court holds that the Pollution Exclusions do not bar coverage for the claims of the Youngers for the incident at issue. The Court reaches the ruling prior to resolving whether the clauses are ambiguous because under the "reasonable expectations" doctrine, the Court is obliged to read the Pollution Exclusions in light of the reasonable expectations of an ordinary policy holder.[49]  In doing so, the Court holds that regardless of ambiguity, the result will be the same, namely, the Pollution Exclusions do not bar coverage or the Youngers' claims.[50]

---

[47] *Id.* (citing Sturgill v. Life Ins. Co. of Ga., 465 S.W. 2d 742 (Tenn. Ct. App. 1970)); *see also* Ragsdale v. Deering, 2006 WL 2516391, at *2 (Tenn. Ct. App. Aug. 30, 2006)("Exceptions, exclusions and limitations are to be most strongly construed against the insurer").

[48] It is well settled under Tennessee law that when language of a contract, including an insurance contract, is ambiguous, it will be construed against the drafter. *See* Hanover Ins. Co. v. Haney, 425 S.W. 2d 590 (Tenn. 1968); Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc., 972 S.W. 2d 1, 7 (Tenn Ct. App. 1998).

[49] *See* Harrell v. Minnesota Mut. Lif Ins. Co., 937 S.W.2d 809, 810 (Tenn. 1996); *Ragsdale*, 2006 WL 2516391, at *4; HCA, Inc. v. American Prot. Ins. Co., 174 S.W. 3d 184, 199 (Tenn. Ct. App. 2005); Allstate Ins. Co. v. Watson, 2005 WL 457846, at *3 (Tenn. Ct. App. Feb. 25, 2005)("We adopt the *reasonable expectations rationale* of the *Sutton* line of cases. . .); Bd. of Trs. of the Sumner County Employees Trust Fund v. Graves, 1999 WL 1086454, at * 4 (Tenn. Ct. App. Dec. 3, 1999); *see also Sulphuric Acid*, 211 S.W. 3d at 246 (acknowledging "reasonable expectations" doctrine and noting that it has been applied to the Absolute Pollution Exclusion).

[50] The Tenth Circuit similarly held that "[w]e need not determine whether the policy is ambiguous in the sense that it is subject to two reasonable interpretations because, regardless of ambiguity, we would reach the same result, i.e., that the incident was covered." Reg'l Bank of Colo. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494, 497 (10th Cir. 1994).

The reasonable expectations doctrine satisfies the requirement that construction of insurance contracts, like all contracts, should give effect to the intention and express language of the parties.[51]  "[A]n insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under the insurance policy."[52]  When a policy is unambiguous, a court is required to construe it according to the plain and ordinary meaning of its terms, the meaning of which it should determine in light of the reasonable expectations of the ordinary policy holder.[53]  A finding of ambiguity is not necessary to apply this doctrine.[54]

In this case, the Debtor did not create or produce the pollution.  Nor did it store, use or handle any substances that could constitute pollutants, even under a broad reading of the Pollution Exclusions.  Further, the insured was not in possession of the property on and/or from which the pollutant was emitted.[55]  Idleaire was not a polluter, intentional, unintentional or otherwise.  There is also no evidence that IdleAire held an Environmental Impairment Liability Policy like those that the insurance company introduced at the same time as the

---

[51] *See Harrell*, 937 S.W. 2d at 814; Tata v. Nichols, 848 S.W. 2d 649, 650 (Tenn. 1993); *Ragsdale*, 2006 WL 2516391, at *2; *Graves*, 1999 WL 1086454, at * 4.

[52] *Harrell*, 937 S.W. 2d at 814.

[53] *See id.*

[54] *See id.* at 497.

[55] This is assuming that the carbon monoxide is a pollutant within the meaning of the Pollution Exclusions, an issue that Tennessee has not resolved. *See infra* note 78.

original pollution exclusions[56] and resubmitted when they presented the Absolute Pollution Exclusion to insurance regulators,[57] indicating that they did not believe that their activities might give rise to a polluting event that may exclude their policy coverage. Therefore, it could not have reasonably expected that claims for a malfunctioning unit would be barred under the Pollution Exclusions. This reasonable expectation is not only consistent with the facts presented in this case, but also with the expressed intention forwarded by the insurance industry at the time of the introduction of the exclusion[58] as well as the legislative rationale in jurisdictions requiring such exclusions in policies issued under their laws.[59] Based on this reasonable expectation, this Court finds that the Pollution Exclusions do not apply.

### 4. <u>The Terms are Ambiguous</u>

If the Court must determine whether the Pollution Exclusions are ambiguous, it holds they are as a matter of law. As such, the Pollution Exclusions must be construed in favor of the insured. There are two ways under Tennessee law to find that ambiguity exists. First, if the language of an insurance policy is susceptible to more than one reasonable interpretation it is patently ambiguous.[60] The terms of the Total Pollution Exclusion are not

---

[56] *See supra* note 23 and accompanying text.

[57] *See supra* note 30 and accompanying text.

[58] *See supra* notes 30-33.

[59] *See supra* note 43.

[60] *See* American Justice Ins. Reciprocal v. Hutchison, 15 S.W. 3d 811, 815 (Tenn. 2000); Tenn. Farmers Mut. Ins. Co. v. Witt, 857 S.W. 2d 26, 32 (Tenn. 1993); Tata v. Nichols, 848 S.W. 2d 649, 650 (Tenn. 1993); Gates v. State Auto. Mut. Ins. Co., 196 S.W. 3d 761, 764 (Tenn. Ct. App.
(continued...)

patently ambiguous because the clauses are clearly worded using terms that have common meanings that do not lead to more than one reasonable interpretation.

The plain language of an insurance policy, however, can also be ambiguous, even when there is only one reasonable interpretation of the language, when a plain meaning reading can lead to an absurd result.[61]  This second type of ambiguity, latent ambiguity, differs from patent ambiguity in that the former is characterized as "ambiguous facts" whereas the latter is referred to as "ambiguous terms."[62]  Tennessee law provides that

> A *latent ambiguity* is where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of.[63]

Because the "terms 'irritant' and 'contaminant,' when viewed in isolation, are virtually boundless in their inclusion, for 'there is virtually no substance or chemical in existence that would not irritate or damage some person or property,"[64] the Total Pollution

---

[60](...continued)
2005); Hollis v. Doerflinger, 137 S.W.3d 625, 629 (Tenn. Ct. App. 2003).

[61] *See* Ellison, *supra* note 30, at 22.

[62] Gredig v. Tennessee Mut. Ins. Co., 891 S.W. 2d 909, 915 (Tenn. Ct. App. 1994)(citing Union Planters Corp. v. Harwell, 578 S.W. 2d 87, 92 (Tenn. Ct. App. 1978)).

[63] *Id.* at 914-15 (quoting Teague v. Sowder, 114 S.W. 484, 488 (1908)).

[64] *See* Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir. 1992)(quoting Westchester Fire Ins. Co. v. City of Pittsburg, 768 F.Supp. 1463, 1470 (D. Kan. 1991)).

Exclusion is latently ambiguous. As the Supreme Court of Louisiana explained in *Doerr v. Mobile Oil Corp.,*[65] "[i]n light of. . . the ambiguous nature and absurd consequences which attend a strict reading of these provisions, we now find that the total pollution exclusion was neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind."[66] The courts that have held that the pollution exclusions are latently ambiguous[67] often demonstrate their point by listing the parade of horribles to which a finding that the language unambiguous could lead. For example, the Seventh Circuit Court of Appeals held in *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Company* that absurd results that could ensue from a plain meaning reading include barring "coverage for injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic

---

[65] Doerr v. Mobile Oil Co., 774 So.2d 119 (La. 2000).

[66] *Id.* at 135.

[67] Several states have held that the Absolute Pollution Exclusion and the Total Pollution Exclusion are ambiguous. *See* Reg'l Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494 (10th Cir. 1994)(interpretation purported by insurance company "stretches the plain meaning of the policy exclusion"); Keggi v. Northbrook Prop. & Cas. Ins. Co., 13 P.3d 785 (Ariz. Ct. App. 2000); Anderson Gas & Propane, Inc. v. Westport Ins. Corp., 140 S.W.3d 504 (Ark. Ct. App. 2004); Bodine v. Fireman's Fund Ins. Co., No. 150364, slip op. (Cal. Super. Ct. Sept. 24, 1992); National Grange Mut. Ins. Co. V. Caraker, No. CV 030070715, 2004 WL 1966206 (Conn. Super. Ct. Aug. 6, 2004); American State Ins. Co. V. Koloms, 687 N.E. 2d 72 (Ill. 1997); *Doerr*, 774 So. 2d 119; Center for Creative Studies v. Aetna Life & Cas. Co., 871 F.Supp. 941 (E.D. Mich. 1994); Hocker Oil Co. v. Barker-Phillips- Jackson, Inc., 997 S.W. 2d 510 (Mo. Ct. App. 1999); Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 530 (9th Cir. 1997); Anderson v. Highland House Co., 757 N.E. 2d 329 (Ohio 2001); Municipality of Mt. Lebanon v. Reliance Ins. Co., 778 A.2d 1128 (Pa. Super. Ct. 2001).

reaction to chlorine in a public pool."[68]  Indeed, counsel for the Youngers also enumerated several possible absurd examples where an insurance company might deny coverage under a strict reading of the Total Pollution Exclusion including: sand blowing into the eye of a child when a parks department employee replenishes sand in a sand box; a perfume counter employee spraying perfume in a customer's eye; a diner employee spilling coffee on a customer; a child drinking a cup of cleaner that was left on the floor by a janitor; a playing child yelling too loudly in the ear of another child, damaging the ear drum.  All of these circumstances technically fall within the plain meaning of the exclusion, satisfying all of the necessary elements for an insurance company to deny coverage.  Perhaps the most absurd example was given by the California Superior Court when they held that the insurance companies' "ultimate conclusion could result in a person being 'polluted' by being struck in the face by a speeding bullet."[69]  Essentially, a plain meaning interpretation of the exclusions renders the policies themselves illusory.

Courts that have held that a strict reading of the Total Pollution Exclusion would lead to an absurd result advocate a "limiting principle" to prevent the exclusion from extending beyond its intended scope[70] and to prevent absurd results like those listed above.[71]  These

---

[68] 976 F.2d 1037, 1043 (7th Cir. 1992)(the court continued "Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution").

[69] *Bodine*, No. 150364, slip op. at 2.

[70] *See supra* notes 30-33 and accompanying text.

[71] *See Pipefitters*, 976 F.2d at 1043; *supra* notes 67-68 and accompanying text.

21

courts advocate a "common sense approach when determining the scope of pollution exclusion clauses"[72] in order to prevent barring coverage for "injuries resulting from everyday activities gone slightly, but not surprisingly, awry."[73]  This method is consistent with the overall mandate set out by the Supreme Court in 1828 that insurance policies should cover, at a minimum, the ordinary torts of a particular insured.[74]  Tennessee state courts have not, as state above, determined the existence of ambiguity, latent or otherwise, of the Total Pollution Exclusion.  However, the concept of latent ambiguity is well accepted under Tennessee law.[75]  The law mandates that "[e]xclusions should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose."[76] If a clause "totally emasculate[s] a previous stated coverage" then the exclusion

---

[72] *Pipefitters*, 976 F.2d at 1043 (citing Westchester Fire Ins. Co. v. City of Pittsburg, 768 F.Supp. 1463, 1468-71 (D. Kan. 1991)).  This common sense approach is, admittedly, similar to the "reasonable expectations" doctrine discussed above *supra* Part III.B.3.  In fact, some decisions appear to conflate the two. *See* Reg'l Bank of Colo. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494 (10th Cir. 1994)(deciding case based on "reasonable expectations" doctrine but also discussing "limiting principle").

[73] *Pipefitters*, 976 F.2d at 1044 (citing *Pittsburg*, 768 F.Supp. at 1468-71 (injuries arising from ingestion of malathion during municipal pesticide-spraying operation); A-1 Sandblasting & Steamcleaning Co. v. Baiden, 632 P.2d 1377, 1379-80 (1981)(paint damage to vehicles occurring during spray painting of a bridge); Atlantic Mut. Ins. Co. v. MacFadden, No. 90-5487, slip op. (Mass. Super. Ct. May 28, 1991)(apartment dweller ingested lead paint); Cole v. Celotex Corp., No. 87-6170 (La. Dist. Feb. 15, 1990)(release of asbestos particles during installation, handling and removal of insulation)).

[74] *See* Buck v. Chesapeake Ins. Co., 26 U.S. 151, 160 (1828).

[75] *See supra* note 63 and accompanying text.

[76] Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., 972 S.W. 2d 1, 8 (Tenn. Ct. App. 1998)("Insurance policies should be construed as a whole in a reasonable and logical manner"); Dixon v. Gunter, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982)("The contract should not be given a
(continued...)

will be "repugnant," and "the insured must have the benefit of the ambiguity."[77]  This Court believes that the Tennessee Supreme Court would hold that the terms of the Total Pollution Exclusion at issue here are latently ambiguous because a strict reading defeats the intended purpose of the Policies and leaves the insured and third parties unprotected.

Therefore, the Court must apply the "limiting principle"– the common sense approach– to determine whether the incident in this case is barred per the exclusion, keeping in mind also that this latent ambiguity should be resolved in favor of the insured.  Common sense leads this Court to determine that this case does not fall within the purview of the Total Pollution Exclusion because the circumstances are too far removed from the common understanding of pollution and applying the exclusion here would lead to an absurd result. Therefore, the Youngers must prevail on their cross-motion for summary judgment.

### 5. **If the Terms are Unambiguous, The Result is the Same**

Finally, even if the terms of the Pollution Exclusions are unambiguous and should be strictly construed, as argued by Wasusau, the claims would still be covered because the Debtors were not polluters.

Assuming, without deciding, that carbon monoxide constitutes a pollutant within the meaning of the Total Pollution Exclusion, an issue that in fact remains unresolved under

---

[76](...continued)
forced, unnatural or unreasonable construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion or render the policy nonsensical and ineffective").

[77] Beef N'Bird of America, Inc. v. Cont'l Cas. Co., 803 S.W.2d 234 (Tenn. Ct. App. 1990).

Tennessee law,[78] a strict interpretation of the Pollution Exclusions does not require this Court to hold that coverage is excluded.  Even with every element satisfied, contamination, environment, and pollutant, the fact remains that the Debtors were not polluters.  The court in *Doerr* made clear that the "applicability of a total pollution exclusion in any given case must necessarily turn on several considerations" including "[w]hether the insured is a 'polluter' within the meaning of the exclusion."[79]  As stated above,[80] Debtors did not create, use, handle, have control over, or store the carbon monoxide.

At the invitation of the Court, counsel for Wausau provided a list of cases holding that pollution exclusions apply, even when the insured did not cause or was not the source of the pollution.  These cases, however, are all factually distinguishable from the case at issue

---

[78] Tennessee courts have not decided whether carbon monoxide is a pollutant under the Total Pollution Exclusion, and there has been significant case law demonstrating that this is not a clear-cut issue. *Compare* Reg'l Bank of Colo, N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494 (10th Cir. 1994)(carbon monoxide not "pollutant" within meaning of Absolute Pollution Exclusion); American States Ins. Co. v. Koloms, 687 N.E. 2d 72 (Ill. 1997)(carbon monoxide not "pollutant" within meaning of total or absolute pollution exclusion); Motorist Mut. Ins. Co. v. RSJ, Inc., 926 S.W. 2d 679 (KY. Ct. App. 1996)(carbon monoxide not "pollutant within meaning of total or absolute pollution exclusion); Western Alliance Ins. Co. v. Gill, 686 N.E. 2d 997 (Mass. 1997); *and* Stoney Run Co. v. Prudential- LMI Comm. Ins. Co., 47 F.3d 34 (2d Cir. 1995)(applying NY law) *with* Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997 (4th Cir. 1998) (holding that carbon monoxide falls within parameters of absolute or total pollution exclusion)(applying Maryland law); Bernhardt v. Hartford Fire Ins. Co., 648 A.2d 1047 (Md. Ct. App. 1994); *and* Essex Ins. Co. v. Tri-Town Corp., 863 F. Supp. 38 (D. Mass. 1994) (applying Massachusetts law); League of Minnesota Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419 (Minn. Ct. App. 1989).  Of note is that one case cited by the Tennessee Appellate Court in *Sulphuric Acid*, admittedly for another proposition, was the *Koloms* case which is a major case in this area holding that carbon monoxide is not a pollutant under a total or absolute pollution exclusion. *See* Sulphuric Acid Trading Co., Inc. v. Greenwich Ins. Co., 211 S.W. 3d 243, 248 (Tenn. Ct. App. 2006).

[79] Doerr v. Mobile Oil Corp., 774 So. 2d 119, 135 (La. 2000).

[80] *See supra* Part III.B.3.

because in every one of the additional cases, the insured was either in possession or control of the property from which the pollution was emitted (even if they were unaware that the pollutants were present)[81] or the manufacturer of the product that created the pollution as a by-product.[82]  In this case, Idleaire was neither in possession of the property on which the incident occurred[83] nor did Idleaire create the carbon monoxide–  the gas came from other idling trucks.  Simply put, the Pollution Exclusions do not apply when the insured is not the entity or in control of the property that polluted, even under the strictest reading of the clauses.

## C. Breach of Insurance Contract by IdleAire

Wausau also argued that if this Court were to hold that the Pollution Exclusion does not apply, IdleAire breached the terms of the Policies, rendering them unenforceable.  Specifically, Wausau alleges that conversations between the Youngers and Idleaire executives and the delay in notifying Wausau constituted these breaches.  Wausau relies on provisions of the Policies which in the CGL policy under "Duties in the Event of Occurrence, Offence Claim or Suit," provide that:

---

[81] *See* Powers Chemco, Inc. v. Fed. Ins. Co., 144 A.D. 2d 445, 448 (N.Y. App. Div. 1988)(holding that pollution exclusion barred coverage for clean up by insured of pollution left by previous owner of insured's property); *see also* Resure, Inc. v. Chem. Distrib., Inc., 927 F. Supp. 190. 193 (M.D. La. 1996)(insured failed to thoroughly clean rented truck's tank before returning it, causing explosion).

[82] *See* Park-Ohio Industries, Inc. v. Home Indemn. Co., 975 F.2d 1215, 1222 (6th Cir. 1992)(insured produced furnaces which emitted injurious fumes).

[83] In fact, even if you consider the cab of the truck or the Youngers themselves, which a strict reading of the Pollution Exclusions may require, the environment, the Debtors still did not have control over the environment.

[The insured] must see to it that [the insurers] are notified as soon as practicable of an "occurrence" or an offence which may result in a claim. . .

If a claim is made or "suit" is brought against any insured, [the insured] must: . . .

    Notify [the insurer] as soon as practicable.

    [The insured] must see to it that [the insurers] receive written notice of the claim or "suit" as soon as practicable.

[The insured] any any other involved insured must. . .

    Cooperate with [the insurer] in the investigation or settlement of the claim or defense against the "suit";

No insured will, except at their own expense, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without [the insurer's] consent.[84]

The Court cannot grant summary judgment on this issue because there are genuine issues of fact. Namely, Wausau has not satisfied its initial burden of demonstrating that the actions of the Idleaire executives prejudiced the insurer.

Tennessee law requires a showing that the insureds' breach of the policy prejudiced the insurers before the company can deny coverage.[85] The Tennessee Supreme Court held in *Alcazar v. Hayes* that there are three rationales for the shift in requiring a showing of prejudice: "1) the adhesive nature of insurance contracts; 2) the public policy objectives of compensating tort victims; and 3) the inequity of the insurer receiving a windfall due to a

---

[84] As quoted from the CGL Policy , Section IV(2) in D.I. 12. The UEL policy contains virtually identical language in Section V(G).

[85] *See* Alcazar v. Hayes, 982 S.W. 2d 845, 850 (Tenn. 1998).

technicality."[86]  In keeping with the stated rationales of the Tennessee courts, this Court holds that Wausau has not made an adequate showing or prejudice sufficient to sustain a motion for summary judgment.

## CONCLUSION

For the forgoing reasons, as to the Total Pollution Exclusion applicability, the Court grants summary judgment in favor of the Youngers and denies summary judgment to Wausau.  The Court also holds that there are material issues of fact as to whether Idleaire breached the Policies and prejudiced Wausau.  Plaintiff's motion for summary judgment will be denied.


Dated: February 18, 2009

Kevin Gross, U.S.B.J.

---

[86] *Id.*